IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
BILLINGS DIVISION

JODI LYNN BROWN,

Plaintiff,

vs.

CHARTER COMMUNICATIONS, LLC,

Defendant.

CV 26-63-BLG-KSL

MEMORANDUM OPINION AND ORDER

Pro Se Plaintiff Jodi Brown sued her former employer, Defendant Charter Communications, LLC in state court following an allegedly wrongful termination. (Doc. 1-1). Charter timely removed. (Doc. 1). Charter now moves to stay the proceedings and compel arbitration pursuant to an arbitration agreement. (Doc. 7). In response, Brown moves to strike one of Charter's exhibits, the "electronic arbitration agreement," arguing that it is not properly authenticated. (Doc. 14 at 1). Because Charter has presented sufficient evidence to support a finding that its exhibit is what it purports to be, the Court denies Brown's motion to strike. Since there is a valid and applicable arbitration agreement, the Court grants Charter's motion to stay and compel arbitration.

## I. Background

According to Brown's "Master Evidence," which functions as her complaint, Brown worked for Charter for "over 14 consecutive years" from 2011-2025. (Doc. 1-1 at ¶¶4, 11). In 2017, Charter implemented an arbitration agreement for all of its active non-union, non-executive employees who were not then on leave of absence, which Charter claims includes Brown. (Doc. 8-1 ¶¶6, 18). Charter claims it emailed Brown the terms of the agreement and informed her that the agreement would become effective if she did not opt out within 30 days. (*Id.* at 8). According to Charter, Brown failed to opt out. (Doc. 8 at 4). Brown claims that she was on bereavement leave when the arbitration agreement was allegedly sent and that she never received it. (Doc. 14 at 2). In her response to the motion to compel arbitration, Brown also asserts that she was laid off for a short time the next year before accepting a role in Charter's retention department. (Doc. 9 at 2).

Charter claims it updated the terms of the agreement in 2024, again notifying Brown by email. (Doc. 8-1 at ¶¶22, 25). The update applied to employees "by virtue of [their] continued employment" past October 21, 2024. (*Id.* at 47). But Brown asserts that the agreement does not bind her because she was "permanently separated from her retention role" prior to the effective date. (Doc. 9 at 2-3). Brown also alleges that Charter failed to provide her with internal appellate procedures upon her

termination as required by state law. (*Id.* at 1). After her termination, Brown received a "right to sue" letter from the EEOC. (Doc. 10-1 at 25).

Charter now moves to compel arbitration under the 2017 agreement and the 2024 update. (Doc. 8 at 13). In support of its motion to compel, Charter attaches a declaration from its Vice President of HR Technology, John Fries, which includes associated exhibits. (Doc. 8-1). Brown moves to strike one of those exhibits, the electronic arbitration agreement, arguing that it is fabricated. (Doc. 14 at 1). Brown also filed a surreply which generally challenges some of Charter's evidence. (Doc. 18). Although the District of Montana Local Rules prohibit surreplies without prior leave of the Court, the Court will consider Brown's surreply to the extent it responds to new evidence in Charter's reply brief, as explained below. D. Mont. Civil Local Rule 7.1(d)(1)(D).

## II. Threshold Issues

Before turning to the motion to compel arbitration, the Court must decide three threshold issues. First, the Court must independently determine if it has subject-matter jurisdiction. Next, the Court must decide whether the challenged exhibits are sufficiently authenticated to merit admission under Rule 901 and consideration in the motion to compel. Finally, the Court must decide whether to sua sponte strike the surreply as a violation of the local rules.

### A. Subject Matter Jurisdiction

A federal court has subject matter jurisdiction over a civil case removed from state court if the case could have originated in federal court. 28 U.S.C. §1441; *see also Washington v. Chimei Innolux Corp.*, 659 F.3d 842, 847 (9th Cir. 2011). Federal courts must confirm their own jurisdiction, even if the parties do not raise jurisdictional defects. *Chavez v. JPMorgan Chase & Co.*, 888 F.3d 413, 415 (9th Cir. 2018). If at any time before final judgment the Court determines it lacks subject matter jurisdiction, it must remand the action to state court. 28 U.S.C. §1447(c).

In removing the case to federal court, Charter relies solely on 28 U.S.C. §1332. Under §1332, federal courts have original jurisdiction over civil actions where there is complete diversity between the parties and the amount in controversy exceeds $75,000. *Chavez*, 888 F.3d at 415. When the complaint fails to state an amount in controversy, the removing party can assert one. *Dart Cherokee Basin Operating Co., LLC v. Owens*, 574 U.S. 81, 84 (2014). When the plaintiff does not challenge the removing party's proposed amount in controversy, and the Court does not have reason to question that amount, the Court should accept that amount as true. *Id.* at 87.

The amount at issue here satisfies the amount-in-controversy requirement. In the complaint, Brown seeks damages in the amount of four years of lost wages and

fringe benefits, as well as punitive damages. (Doc. 1-1 at 3). But she fails to state a specific amount in controversy. (*Id.*) The notice of removal calculates the value of the lost wages alone at over $250,000. (Doc. 1 at ¶17(b)). Brown's requests for fringe benefits and punitive damages add to that amount. (Doc. 1-1 at 3). Brown does not contest removal and does not challenge Charter's proposed amount in controversy. (Doc. 9 at 5). Because Brown does not challenge Charter's calculation and it appears reasonable from the record, the Court takes it as true. *Dart Cherokee*, 574 U.S. at 87. Because Charter has plausibly alleged that potential damages exceed $75,000, the Court concludes that the amount in controversy is satisfied for federal jurisdiction.

Next, there must be complete diversity between the parties. *Chavez*, 888 F.3d at 415. Complete diversity means each plaintiff's citizenship must be diverse from each defendant's. *Caterpillar Inc. v. Lewis*, 519 U.S. 61, 68 (1996). Individuals are citizens of the state where they are domiciled, meaning the state where they reside and intend to remain. *Adams v. W. Marine Prods., Inc.*, 958 F.3d 1216, 1221 (9th Cir. 2020). A limited liability company shares citizenship with all of its members. *Johnson v. Columbia Props. Anchorage, LP*, 437 F.3d 894, 899 (9th Cir. 2006). A corporation is a citizen of both the state where it is incorporated and the state where

it has its principal place of business. *Lincoln Prop. Co. v. Roche*, 546 U.S. 81, 89 (2005); 28 U.S.C. §1332(c)(1).

The record establishes complete diversity between the parties. Charter states, and Brown does not challenge, that Brown is domiciled in Montana, and none of the entities in Charter's organizational structure are citizens of Montana. (Doc. 1 at ¶¶11, 12(a)-(u)). Brown admits in her complaint that she is a Montana resident and there is no indication that she intends to leave the state. (Doc. 1-1 at ¶1); *Adams*, 958 F.3d at 1221.

Charter's corporate structure has multiple layers of single member LLCs and corporations. (Doc. 1 at ¶12(a)-(u)). Because Charter's citizenship depends on each layer of membership above it, the Court must trace its membership to the origin. For diversity purposes, the ultimate owners of Charter Communications, LLC are Charter Communications, Inc., a Delaware corporation with a principal place of business in Connecticut, Hunter Acquisition Holdings, Inc., a Delaware corporation with a principal place of business in Missouri, Newhouse Broadcasting Corporation, a New York Corporation with a principal place of business in New York, and Advance Magazine Publishers, Inc., a New York corporation with a principal place of business in New York. (*Id.*) None are citizens of Montana. (*Id.*) Brown therefore does not share citizenship with any defendant, and the parties are completely diverse.

*Caterpillar Inc.*, 519 U.S. at 68. Because there is complete diversity between the parties and the amount in controversy exceeds $75,000, the Court has jurisdiction to proceed. *Chavez*, 888 F.3d at 415.

**B. Brown's Motion to Strike**

Brown moves to strike an exhibit containing the "purported electronic arbitration agreement" because she argues that it lacks authentication. (Doc. 14 at 1). Namely, she believes the exhibit is fabricated because it contains her new employee identification number rather than the one that was active at the time the agreement was allegedly executed. *Id.* Brown challenges Exhibit C, which depicts the 2017 agreement. Her characterization of its contents, however, points to Exhibit E, which depicts Charter's record of Brown's "Opt-Out Acknowledgement" and is the only exhibit that contains Brown's new employee number. (Doc. 8-1 at 45). The Court addresses both exhibits.

Because Brown challenges the exhibit under Federal Rule of Evidence 901 (Doc. 14 at 1), the Court construes Brown's motion as an evidentiary objection. When evaluating the challenged exhibits, the Court applies a standard similar to the summary judgment standard, asking whether the contents of the exhibits could be presented in a form that would be admissible at trial. *Hansen v. LMB Mortg. Servs., Inc.*, 1 F.4th 667, 670 (9th Cir. 2021); *see also Fraser v. Goodale*, 342 F.3d 1032,

1037 (9th Cir. 2003). To admit an exhibit under Rule 901(a), the proponent of a piece of evidence does not need to conclusively prove that it is genuine. *Los Angeles News Serv. v. CBS Broad., Inc.*, 305 F.3d 924, 935 (9th Cir.), *opinion amended on denial of reh'g*, 313 F.3d 1093 (9th Cir. 2002). Rather, the proponent must only present sufficient evidence to support a finding that the evidence is what it purports to be. *United States v. Gadson*, 763 F.3d 1189, 1203 (9th Cir. 2014). Put simply, the evidence is admissible if "a reasonable juror could find in favor of authenticity or identification." *United States v. Pang*, 362 F.3d 1187, 1193 (9th Cir. 2004) (cleaned up). Once the proponent makes that prima facie showing, any remaining challenge to the authenticity of the evidence goes to its weight, not its admissibility. *E.W. French & Sons, Inc. v. Gen. Portland Inc.*, 885 F.2d 1392, 1398 (9th Cir. 1989).

A document can be authenticated by the testimony of a witness with knowledge, or by evidence describing a process or system and showing that it produces an accurate result. Fed. R. Evid. 901(b)(1), (9); *see also, e.g., United States v. Workinger*, 90 F.3d 1409, 1415-16 (9th Cir. 1996). At the summary judgment stage, this testimony can take the form of a declaration. Fed. R. Civ. P. 56(c)(4). Witnesses with the requisite knowledge under Rule 901(b) include those who understand the record keeping system for the record at issue. *See United States v. Blackwood*, 878 F.2d 1200, 1202 (9th Cir. 1989).

Here, Charter has produced enough evidence that the exhibits are what they claim to be to merit their admission. Both Exhibit C and Exhibit E are supported by a declaration from John Fries, Charter's Vice President of HR Technology. (Doc. 8-1). Fries has held this position since February 2019, after Charter implemented the arbitration agreement for active non-union, non-executive employees. (Doc. 8-1 at ¶¶1, 5-6). His knowledge of those events is based on his role overseeing Charter's HR technology, and his review of Charter's electronic records and information systems. (Doc. 8-1 at ¶1). This familiarity with Charter's records and systems qualifies Fries as a witness with knowledge under Rule 901(b)(1). *Blackwood*, 878 F.2d at 1202. In his declaration, Fries also explains the relevant background to the exhibit: Charter announced the Solution Channel program by email in 2017 to all active, non-union, non-executive employees who were not on leave; the email included a link to the Charter intranet site that contained information including the Agreement and the Guidelines; the intranet provided instructions for opting out of the arbitration agreement; an email was sent to those who opted out; and employees who did not opt out by November 5, 2017, were enrolled. (Doc. 8-1 at ¶¶5-6, 9-10, 14-15). Fries states that Exhibit C is a true and accurate copy of the Agreement and the Guidelines. (Doc. 8-1 at ¶9). He also states that Exhibit E is a true and correct copy of Charter's record showing Brown was a participant in the Solution Channel program as of November

6, 2017. (Doc. 8-1 at ¶20). His declaration sufficiently authenticates both exhibits. Fed. R. Evid. 901(b)(1), (9); *see also Blackwood*, 878 F.2d at 1202. To the extent Brown's motion reaches any of Charter's other exhibits, the same analysis applies, because Fries's declaration authenticates each of them.

Brown's argument about her employee identification number does not alter this conclusion. As an initial matter, Exhibit C is the Agreement and Guidelines made available to all employees, and it does not contain Brown's employee identification number. (Doc. 8-1 at 13-41). Her argument does not apply to this exhibit. As to Exhibit E, Charter only needs to make a prima facie showing that the exhibit is what it says it is. *Gadson*, 763 F.3d at 1203. Charter's exhibit is a record which shows Brown's participation as of November 6, 2017. (Doc. 8-1 at ¶20); *see also* (Doc. 8-1 at 45). Brown presents no evidence that the exhibit was fabricated, offering only an unsworn statement in her brief. (Doc. 14 at 1-2); *Pimentel v. City of Los Angeles*, 115 F.4th 1062, 1072 (9th Cir. 2024). While Brown argues that the record is fraudulent because it is "chronologically impossible," Charter makes no claim about when the document was created. (Doc. 14 at 2; Doc. 8-1 at ¶20); *see also* (Doc. 8-1 at 45). A rational factfinder could credit Charter's evidence, so Brown's argument goes to weight rather than admissibility. *Pang*, 362 F.3d at 1193; *E.W. French*, 885 F.2d at 1398.

Because the declaration was made by a witness with knowledge of Charter's system and the records it produced, the Court finds that Charter has made a prima facie showing that Exhibits C and E are what Charter claims they are. Fed. R. Evid. 901(a). Both exhibits are appropriate for the Court to consider in the motion to compel arbitration.

**C. Brown's Surreply**

Brown also filed a surreply (Doc. 18) without leave of the Court in violation of the local rules. D. Mont. Civil Local Rule 7.1(d)(1)(D). The Court therefore has discretion to disregard it. *Smith v. Frank*, 923 F.2d 139, 142 (9th Cir. 1991). But the Court retains "broad discretion to depart from the local rules" when it "makes sense to do so and substantial rights are not at stake." *Nunley v. City of Los Angeles*, 52 F.3d 792, 795 (9th Cir. 1995) (cleaned up).

Allowing the surreply here advances the interests of justice. Brown argued for the first time in her response that she was laid off in 2018, severing the employment relationship. (Doc. 9 at 2). Charter's reply attempts to rebut Brown's argument by producing all of her paystubs from that year. (Doc. 17-1). Brown responds in the surreply that the paystubs merely reflect payoffs for a mass layoff event rather than continuous employment. (Doc. 18 at 2). The Court may consider Charter's paystubs because they respond to an argument Brown raised for the first time in her opposition

brief. *Flathead-Lolo-Bitterroot Citizen Task Force v. Montana*, 98 F.4th 1180, 1188 (9th Cir. 2024). But because the Court considers this evidence, fairness requires that Brown have an opportunity to respond to this evidence, which she does in her surreply. (*Id.*) The Court considers her surreply to the extent it responds to Charter's evidence; but the Court does not consider Brown's unconscionability argument, which was not raised until the surreply and was therefore forfeited. *See Mohamed v. Uber Techs., Inc.*, 848 F.3d 1201, 1205 (9th Cir. 2016). In addition, Charter did not object to the surreply. The Court finds that considering the surreply's response to Charter's evidence would not impact substantial rights, and, for the reasons stated above, departing from the local rules would further the interests of justice. *Nunley*, 52 F.3d at 795. The Court grants leave to file a surreply and will consider its responses to Charter's paystub evidence. *Id.*

### III. Charter's Motion to Compel Arbitration

Having decided the threshold issues, the Court now turns to the merits of the motion to compel arbitration. The Federal Arbitration Act establishes "a liberal federal policy favoring arbitration agreements." *New Prime Inc. v. Oliveira*, 586 U.S. 105, 120 (2019) (cleaned up). As a result, ambiguity about the scope of arbitration agreements is decided in favor of arbitration. *Boardman v. Pac. Seafood Grp.*, 822 F.3d 1011, 1018 (9th Cir. 2016). But the presumption in favor of arbitration does not

apply to the existence of an agreement. *Goldman, Sachs & Co. v. City of Reno*, 747 F.3d 733, 742 (9th Cir. 2014). Rather, courts must put arbitration agreements on equal footing with other contracts. *Arthur Andersen LLP v. Carlisle*, 556 U.S. 624, 630 (2009). As with other contracts, courts turn to state law when evaluating the formation of arbitration agreements. *Oberstein v. Live Nation Ent., Inc.*, 60 F.4th 505, 510 (9th Cir. 2023). But the Act preempts contrary state law. *Mortensen v. Bresnan Commc'ns., LLC*, 722 F.3d 1151, 1158 (9th Cir. 2013). This means that arbitration agreements are subject to general contract defenses, but states cannot single them out for special treatment. *See Revitch v. DIRECTV, LLC*, 977 F.3d 713, 719 (9th Cir. 2020).

In deciding motions to compel arbitration, courts can consider "all relevant, admissible evidence," including declarations and pleadings. *Herrera v. Cathay Pacific Airways Ltd.*, 104 F.4th 702, 705 (9th Cir. 2024). The party seeking to compel arbitration must show the existence of an agreement to arbitrate by a preponderance of the evidence. *Keebaugh v. Warner Bros. Ent. Inc.*, 100 F.4th 1005, 1013 (9th Cir. 2024). In determining whether that burden has been met, the Court applies a standard similar to the summary judgment standard. *Hansen*, 1 F.4th at 670. If the party opposing arbitration produces evidence creating a genuine dispute of material fact as to the existence of an agreement, the Court may not resolve the dispute and must

proceed to trial on the question of whether an agreement exists. *Id.* To carry its burden at this stage, the movant must show that there is a valid agreement to arbitrate and that the agreement encompasses the dispute. *Geier v. m-Qube Inc.*, 824 F.3d 797, 799 (9th Cir. 2016). The Court addresses each element individually.

**A. There is a Valid and Binding Agreement to Arbitrate**

The parties dispute whether there is a valid agreement to arbitrate. In evaluating the validity of the arbitration agreement, the Court turns to Montana contract law. *Oberstein*, 60 F.4th at 510. In Montana, a contract requires identifiable parties capable of contracting, their consent, a lawful object, and consideration. Mont. Code Ann. §28-2-102. Parties can communicate their consent "by some act or omission of the party contracting by which the party intends to communicate it or that necessarily tends to such communication." *Id.* §28-2-501(1); *see also Hayes v. Hartelius*, 697 P.2d 1349, 1352 (Mont. 1985). This means that contracts need not be signed to be effective. *Goodell v. Sanford*, 77 P. 522, 526 (Mont. 1904). Parties can be bound even if they do not read the agreement. *Zimmerman v. Mut. Life Ins. Co. of N.Y.*, 3 P.2d 278, 280 (Mont. 1931). And continuing employment after notice of an agreement can signify acceptance of the agreement. Mont. Code Ann. §28-2-501(1); *see also Johnson v. Chicago, Milwaukee & St. Paul. R.R Co.*, 230 P. 52, 57 (Mont. 1924). Several federal courts have compelled arbitration under this same Charter

Solution Channel program on that basis. *See, e.g.*, *Osborne v. Charter Commc'ns, Inc.*, No. 4:18CV1801 HEA, 2019 WL 2161575 (E.D. Mo. May 17, 2019); *see also Collins v. Charter Commc'ns, LLC*, No. 1:19 CV 2774, 2020 WL 13966034 (N.D. Ohio June 18, 2020) (collecting cases).

Here, Charter produced evidence that it emailed an arbitration agreement to certain employees, including Brown in 2017. (Doc. 8-1 at ¶¶5, 6, 18). *See also* (Doc. 8-1 at 7-8, 45). Under the agreement, employees had 30 days to opt out, and Charter produced evidence that Brown failed to do so. (*Id.* at ¶¶8, 20). *See also* (Doc. 8-1 at 8, 45). Charter also produced evidence that it sent Brown an updated agreement on October 17, 2024, which stated that the update would apply "by virtue of your continued employment" effective October 21, 2024. (*Id.* at ¶¶21-25). *See also* (Doc. 8-1 at 47). In total, Charter produced copies of both the agreement and the update, a declaration from its Vice President of HR Technology describing the systems through which the agreement and update were distributed, and Charter's internal records which reflect that Brown received the agreement and failed to opt out. (Doc. 8-1).

Brown offers several responses but fails to provide evidence for many of her claims. She argues that no agreement was formed under state contract law, that Charter's exhibits in support of its motion to compel arbitration are fraudulent, that she

never received the agreement, that her employment timeline either terminated the agreement or prevented its formation, and that statutory provisions and administrative actions excuse her from arbitration. Brown has not submitted a declaration or other sworn statement—her factual assertions appear only in her unsworn briefs. Such assertions are not evidence and cannot create a genuine dispute of material fact. *Pimentel*, 115 F.4th at 1072. Brown did attach documents to her briefs, which the Court considers; but her factual assertions and characterizations of these documents are not evidence. Because several of Brown's arguments raise legal questions, the Court addresses each in turn.

Brown first challenges the agreement under general contract principles. Brown argues that there was no "meeting of the minds" because none of the exhibits bear her signature or any other identifying mark which would connect the agreement to her. (Doc. 9 at 2-4). Brown's references to Charter's exhibits do not match Charter's labels. Based on Brown's descriptions, the Court construes her references to "Exhibit D" as Exhibit C (the agreement and guidelines), and to "Exhibit E" as Exhibit D (the opt-out screen). (Doc. 8-1 at 13-41, 45; Doc. 9 at 2-3). Brown similarly argues that Exhibit F, which depicts an email announcing the 2024 update, is unexecuted. (Doc. 9 at 3).

Brown's argument fails for three reasons. First, a signature is not required to form a contract under Montana law. Mont. Code Ann. §28-2-501(1). Second, the agreement gave employees thirty days to opt out before they were automatically enrolled in Solution Channel and considered to have consented to the agreement. (Doc. 8-1 at 8, 20). Montana law permits this type of agreement. *Johnson*, 230 P. at 57. Third, the agreement connects to Brown: Charter sent her the communications in 2017 while she was employed, she did not opt out, and she has participated in the program since November 6, 2017. (Doc. 8-1 at 5-6, 18-19). *See also* (Doc. 8-1 at 45). Under the express terms of the arbitration agreement here, Brown signified her acceptance by failing to opt out and continuing to work for Charter for eight more years. *See Johnson*, 230 P. at 57; *Johnmohammadi v. Bloomingdale's, Inc.*, 755 F.3d 1072, 1074 (9th Cir. 2014). To the extent Brown argues otherwise, her failure to read the agreement is no defense. *Zimmerman*, 3 P.2d at 280.

Brown also potentially argues in her surreply that the agreement is unconscionable, although her arguments largely relate to Charter's alleged conduct rather than the agreement itself. (Doc. 18 at 1). As explained above, Brown forfeited this argument by raising it for the first time in her surreply. *Mohamed*, 848 F.3d at 1205. In any event, her claim fails. First, an opt-out provision defeats a claim of procedural unconscionability, and the agreement here gave her thirty days to opt out. *Circuit*

*City Stores v. Ahmed*, 283 F.3d 1198, 1199-1200 (9th Cir. 2002). Second, Brown bears the burden of showing unconscionability, and she did not identify any substantively unconscionable term of the agreement. *See Tedesco v. Home Sav. Bancorp, Inc.*, 407 P.3d 289, 297 (Mont. 2017).

Next, Brown argues that some of Charter's evidence is fabricated because it bears her new employee identification number rather than her operative one at the time the 2017 email was sent. (Doc. 14 at 1). As explained above, the Court finds that the exhibits are admissible, and for the same reasons, Brown's unsupported arguments about her identification numbers do not create a genuine dispute as to whether an agreement was formed.

Brown further argues that the 2017 agreement does not apply to her because she did not receive it. (Doc. 14 at 2). Brown alleges that she was on leave mourning the loss of her friend at the time the agreement was sent and that she had no access to email. (*Id.*) But Charter's distribution list for October 6, 2017, was limited to employees who were not on a leave of absence, and Charter's records show that Brown was on that list. (Doc. 8-1 at ¶¶6, 18). *See also* (Doc. 8-1 at 45). In contrast, Brown presents no evidence that she was on leave at the time, relying only on an unsworn statement in her brief. (Doc. 14 at 2). She has not produced evidence creating a genuine dispute as to whether she received the agreement.

Brown next asserts that her employment timeline takes her outside both the 2017 and 2024 agreements. (Doc. 9 at 2). Brown argues that the update does not apply to her because she was "permanently separated from her retention role" prior to October 21, 2024. (Doc. 9 at 2-3). To the extent that she claims that her discharge terminated the agreement, the agreement contemplates post-termination disputes. (Doc. 8-1 at 68). To the extent she claims she was terminated prior to October 2024, her complaint says otherwise. According to the complaint, Brown was laid off on September 11, 2025, following a failure to undergo a "medical interrogation." (Doc. 1-1 at ¶11). Many of the events leading up to her termination also occurred in 2025. (*Id.* at ¶¶6, 8-10). The Court must treat factual allegations in a complaint as judicial admissions binding on the pleader. *American Title Ins. Co. v. Lacelaw Corp.*, 861 F.2d 224, 226 (9th Cir. 1988). Here, this means that Brown's allegation that she was laid off in 2025 controls, and she cannot now claim she was terminated in 2024. *Id.* Even if Brown was not bound by her complaint, she provides no evidence of a 2024 termination. And Charter's records show that Brown was included on the October 17, 2024, distribution list, which was sent to all employees with active email accounts who were not on leave, not subject to a collective bargaining agreement, and previously agreed to the arbitration agreement. (Doc. 8-1 at ¶¶21, 25). Brown fails

to create a genuine dispute as to whether she was employed by Charter during the relevant period in 2024 and whether she received the update.

Brown's argument about the 2017 agreement similarly fails. She asserts that the 2017 agreement does not apply to her because she was laid off in 2018, severing the employment relationship. (Doc. 9 at 2). As an initial matter, even if there was a break in the employment relationship, the agreement as it then existed specified that it survives re-employment. (Doc. 8-1 at 41). The argument fails regardless of whether a break occurred in 2018. But Brown has failed to create a genuine dispute as to whether a break occurred. Brown's assertion that she was terminated in 2018 is contradicted by her own complaint, which alleges that she worked at Charter for "over 14 consecutive years" from 2011-2025. (Doc. 1-1 at ¶¶4, 11); *see also American Title*, 861 F.2d at 226. Brown also cites a wave of "new hire" trainings she underwent in late 2019 and 2020. (Doc. 9 at 2; Doc. 10-1 at 15-20). But those trainings list her "last hire date" as July 11, 2011, before either the arbitration agreement or the update went into effect. (Doc. 10-1 at 15-20). Brown does demonstrate that some individuals were terminated from employment with Charter at that time and subsequently rehired. (Doc. 14-1 at 4). As proof she was among them, she asserts that she received a new employee identification number. (*Id.* at 2). This argument is unsworn, and nothing in her documents shows that she was part of the terminated

group. Her evidence at most shows a change in role rather than a break in employment. (Doc. 10-1 at 15-20; Doc. 14-1 at 3-9; Doc. 16 at 2-4). Charter also produced Brown's paystubs for all of 2018, which show biweekly payments from December 29, 2017-January 10, 2019. (Doc. 17-1). In response, Brown argues in her surreply that the paystubs only reflect payouts from a mass layoff rather than continuous employment. (Doc. 18 at 2). But this unsworn assertion does not create a genuine dispute.

Next, Brown claims that Charter waived its right to compel arbitration by failing to comply with Mont. Code Ann. §39-2-911. (Doc. 9 at 4). Brown's argument fails because that statute does not cover arbitration. Instead, it concerns internal appellate procedures. *Id.* §39-2-911. Under the statute, noncompliance with internal appellate procedures serves as an affirmative defense to wrongful termination claims. *Id.* §39-2-911(2). But if the employer does not provide notice of these procedures, the employee is excused from noncompliance. *Id.* §39-2-911(3).

"Internal appellate procedures" do not include arbitration before an independent outsider, *New Regency Prods., Inc. v. Nippon Herald Films, Inc.*, 501 F.3d 1101, 1105-06 (9th Cir. 2007), and the statute only covers claims brought under the Wrongful Discharge from Employment Act, Mont. Code Ann. §39-2-911. Even if the Wrongful Discharge from Employment Act were read as Brown claims, it would

be preempted by the Federal Arbitration Act because it would stand as an obstacle to the "fundamental attributes of arbitration." *Mortensen*, 722 F.3d at 1159 (cleaned up). The statute is inapplicable and would be preempted if read as Brown argues.

Finally, Brown implies that her right to sue letter from the EEOC supersedes the arbitration agreement. (Doc. 10 at 3). Not so. "[M]ere involvement of an administrative agency in the enforcement of a statute" does not excuse parties from duties imposed by arbitration agreements. *Preston v. Ferrer*, 552 U.S. 346, 358 (2008) (cleaned up). Here, the Commission was merely enforcing 42 U.S.C. §2000e-5(f)(1), which requires it to send a right to sue letter if it declines to pursue the case. The EEOC's "mere involvement" through the issuance of a statutorily required notice here does not excuse Brown from her duties under the arbitration agreement. *Preston*, 552 U.S. at 358.

None of Brown's arguments allow her to escape the arbitration agreement. Charter has shown, by a preponderance of the evidence, that the parties formed an agreement to arbitrate under Montana law. Charter and Brown are identifiable parties. Brown consented by failing to opt out in 2017 and continuing her employment after notice of the agreement and the update. The agreement's object is lawful. And the parties' mutual promises to arbitrate constitute consideration. Brown has not created a genuine dispute as to whether she was employed by Charter in 2017 or 2024,

or whether she received the agreement and update. She fails to counter Charter's evidence that both are legally binding on her. Finally, she fails to point to any statutory or administrative authority which would excuse noncompliance with the agreement. Because there is no genuine dispute of material fact as to the existence of an agreement, Charter satisfies the first element in its motion to compel.

**B. The Agreement Covers the Dispute at Issue**

Charter argues that the 2017 arbitration agreement covers all of Brown's claims because the agreement encompasses all disputes based on employment and post-employment conduct, including termination. (Doc. 8 at 11; Doc. 8-1 at 37). The 2024 update similarly covers termination. (Doc. 8-1 at 61, 68, 84). In response, Brown does not contest the scope of the agreement, rather, she challenges the entire agreement as inapplicable. (Doc. 9 at 1-5).

Ambiguity about the scope of arbitration agreements is decided in favor of arbitration. *Boardman*, 822 F.3d at 1018. The agreement here covers "any dispute arising out of or relating to" employment, its termination, or post-employment conduct. (Doc. 8-1 at 37). Brown's claims fall within the agreement's plain terms.

All three of Brown's claims here are covered by the agreement because each arises out of her discharge. *See Heimbigner v. Edgewater Servs., LLC*, 191 F.4th 1129, 1132 (9th Cir. 2026). First, Brown alleges that Charter wrongfully discharged

her under the Wrongful Discharge from Employment Act. (Doc. 1-1 at ¶¶13-14). Next, she alleges Charter violated the Montana Human Rights Act through a "swift, coordinated campaign of administrative leave and termination." (*Id.* at ¶¶15-16). Both of these allegations challenge the termination itself and fall squarely within the scope of the agreement.

Brown's third claim also falls within the agreement. She alleges that Charter committed fraud, deceit, and malicious fabrication of evidence in order to "deceive investigators, mask a retaliatory workforce reduction campaign," and deprive Brown of her rights under the Wrongful Discharge from Employment Act. (*Id.* at ¶¶17-21). This "retaliatory workforce reduction campaign" is the complaint's description of how Brown was terminated, and the "investigators" describe those who were investigating that termination. Her claim that Charter fabricated the justification for her termination and misrepresented her termination falls within the scope of the arbitration agreement. And even if the fabrication occurred after the termination, the arbitration agreement and update cover post-employment disputes. (Doc. 8-1 at 37, 61, 68, 84).

Finally, arbitration is not inconsistent with Brown's claims. The Federal Arbitration Act creates a presumption that all claims are arbitrable. *CompuCredit Corp. v. Greenwood*, 565 U.S. 95, 98 (2012). Only Congress, and not the states, can rebut

this presumption. *Id.*; *Marmet Health Care Ctr., Inc. v. Brown*, 565 U.S. 530, 533 (2012). Congress has not specifically disallowed arbitration of the claims at issue here. Indeed, the Wrongful Discharge from Employment Act specifically allows arbitration. Mont. Code Ann. §39-2-914. And claims under the Montana Human Rights Act and the common law have been arbitrated in the past. *See, e.g.*, *Theis v. Aflac, Inc*, No. CV 20-11-BLG-SPW, 2024 WL 2879116, at *1 (D. Mont. May 14, 2024) (Montana Human Rights Act); *Simula, Inc. v. Autoliv, Inc.*, 175 F.3d 716, 726 (9th Cir. 1999) (common law). The arbitration agreement encompasses each claim, satisfying the second element.

## IV. Stay Pending Arbitration

Because there is a binding and applicable arbitration agreement, the Court must grant a stay of the proceedings pending arbitration. *Smith v. Spizzirri*, 601 U.S. 472, 478 (2024); 9 U.S.C. §3.

## V. Conclusion

In the interest of justice, the Court *sua sponte* **GRANTS** leave to file a surreply only to the extent that it responds to Charter's evidence in the reply. Because the evidence is sufficient to support a finding that the exhibits are what they purport to be, the motion to strike is **DENIED**. The Court finds there is a valid and applicable arbitration agreement, and **GRANTS** the motion to stay and compel arbitration.

This case is **STAYED** pending arbitration. The parties are directed to file a joint status report every three months updating the Court on the status of the arbitration proceedings until arbitration is complete.

IT IS SO ORDERED.

DATED this 10th day of November, 2026.

Kathleen Lane

KATHLEEN S. LANE
United States District Judge